**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JASON MEREDITH**                                                        **PETITIONER**

**v.**                    **NO. 4:26-cv-00053-JM-PSH**

**DEXTER PAYNE**                                                        **RESPONDENT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

Introduction. In this case, filed pursuant to 28 U.S.C. 2254 ("2254"), petitioner Jason Meredith ("Meredith") challenges his 1998 guilty plea. Respondent Dexter Payne ("Payne") maintains that Meredith's petition for a writ of habeas corpus is barred by limitations, and Payne has filed the pending motion to dismiss the petition for that reason. See Docket Entry 6. Although things about this case are disturbing, it is nevertheless recommended that the motion be granted and Meredith's petition be dismissed. The petition is untimely, as it was filed more than twenty-five years after Meredith's conviction became final. The petition's untimely filing is not salvaged by the statutory tolling of 28 U.S.C. 2244(d) ("2244(d)") because his state petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 ("Rule 37) was not "properly filed." It also matters not that the Arkansas Supreme Court affirmed the denial of the Rule 37 petition on procedural grounds but alternatively addressed the merits of the petition. In addition, the 2254 petition's untimely filing is also not salvaged by equitable tolling because Meredith has not been pursuing his rights diligently. Finally, the petition's untimely filing is not salvaged by his assertion of actual innocence.

State Proceedings. The record reflects that on April 6, 1998, Meredith pleaded guilty to two counts of murder in the first degree. A judgment and commitment order was entered on the docket three days later.

On July 2, 1998, Meredith filed a timely Rule 37 petition. On September 20, 1999, and again on November 2, 2023, he filed motions to amend the petition.

On March 7, 2024, the state trial court denied his motions to amend. The court did so because Meredith failed to "act with due diligence in seeking relief under Rule 37.1." See Meredith v. State, 2025 Ark. 38, 708 S.W.3d 765, 768 (2025).

On May 17, 2024, or more than a quarter century after Meredith filed his Rule 37 petition, the state trial court denied the Rule 37 petition. The court did so for the following reasons:

> ... the ... court denied and dismissed with prejudice Meredith's Rule 37 petition for failure to comply with the length and formatting requirements of Rule 37.1(b). [Footnote omitted]. In the alternative, the ... court also denied and dismissed the petition with prejudice "because the files and records of the case conclusively show that the petition is entitled to no relief under Rule 37.3(a)." Based on the "uncertainty of the advice given concerning parole eligibility," the ... court concluded [he] failed to demonstrate that trial counsel was ineffective.

See Id., 708 S.W.3d at 768.

Meredith appealed the denial of his motions to amend and the denial of his Rule 37 petition. On April 10, 2025, the state Supreme Court affirmed the denial of his motions to amend. The state appellate court found that the state trial court did not abuse its discretion in denying the motions to amend, noting that the lower court "used its discretionary authority to analyze the extreme passage of time, over twenty-five years, and the diligence and persistence, or lack thereof, with which Meredith sought relief." See Id. at 769.

In the same opinion, the state Supreme Court affirmed the denial of Meredith's Rule 37 petition, doing so for two reasons. First, the state appellate court affirmed the denial of the petition because it did not conform to the requirements of Rule 37, specifically finding the following:

> ... the [state trial] court denied relief pursuant to Rule 37.1(b) [Footnote omitted]—"Considering [Meredith] filed an overlength petition and for the other reasons of noncompliance ..., the petition is hereby denied and dismissed with prejudice." As the ... court was well within its discretion to dismiss the petition entirely, we affirm on this point.

See Id. Second, the state appellate court affirmed the denial of the petition "on the merits of the petition itself," see Id., specifically finding the following:

4

Here, the [state trial] court found that defense counsel's parole-eligibility advice was not certain and did not constitute a "positive misrepresentation." However, as alleged in the petition, counsel told Meredith before the plea hearing that he would "more than likely" be eligible for parole after six years but would be denied the first couple of times before being granted parole. While counsel did not give a date certain for parole eligibility, he made a positive misrepresentation that Meredith would be parole eligible under a life sentence—when in fact, Meredith would never be eligible for parole. Additionally, the ... court compared the above parole-eligibility-advice allegation with a second instance of alleged parole-eligibility advice and indicated that counsel's advice was conflicting. But the second discussion occurred after the plea and sentencing, and it is irrelevant to whether the plea was entered without effective assistance of counsel. Thus, the ... court erred in comparing the alleged pre- and post-plea advice and finding the advice to be contradictory. The petition sufficiently alleged deficient performance by defense counsel regarding the parole-eligibility advice he gave to Meredith.

While the [state trial] court's findings regarding counsel's parole-eligibility advice are clearly erroneous, this court can affirm when the [state trial] court reaches the right result even if it is for the wrong reason. ... Meredith's claim fails because he did not allege that, but for counsel's erroneous advice regarding parole eligibility, he would have insisted on going to trial (at which death was a possible sentence). His failure to allege prejudice conclusively shows that he is not entitled to relief, and no evidentiary hearing was necessary. ...

See Id. at 770–771.[1] A mandate was issued on April 29, 2025.

---

[1]    The state Supreme Court's decision was not without dissent. A lone Justice opined that the state trial court abused its discretion in denying Meredith's first motion to amend. The Justice noted that Rule 37 did not require the petitioner to act with due diligence, and the version of the Rule the state trial court relied upon in denying the motion to amend was not in effect when Meredith filed his petition.

Federal Proceedings. Meredith began this case on January 15, 2026, by filing the petition at bar. In the petition, he challenged his guilty plea.

Payne responded by filing the pending motion to dismiss. In the motion, he maintained that the petition should be dismissed because it is barred by limitations. He supported his assertion by alleging the following:

> Meredith's sentencing order was filed on April 9, 1998, and he did not seek direct review. Although he filed a timely petition for postconviction relief pursuant to Ark. R. Crim. P. 37.1, it was overlength and failed to comply with state procedural rules. The [state trial] court dismissed the petition for noncompliance, and the Arkansas Supreme Court affirmed. ... Under well-settled law, the non-conforming petition was not "properly filed" and, thus, did not toll the one-year statute of limitations for filing a habeas petition under 28 U.S.C. 2244(d)(2). Likewise, Meredith is not entitled to equitably toll the one-year period, nor can he pass through the narrow actual innocence gateway. ...

See Docket Entry 6 at CM/ECF 1-2.

Meredith filed a response to the motion. Although it was clear the petition at bar was not filed within one year of his conviction becoming final, he maintained that he is entitled to statutory tolling, as the time during which his Rule 37 petition was pending tolled the one-year limitations period for filing a 2254 petition. In support of that assertion, he alleged the following:

> While the [state trial] court dismissed Meredith's Rule 37 petition in part based on noncompliance, it also construed Meredith's substantive claims and denied Meredith's petition on the merits. ... The Arkansas Supreme Court also ruled on Meredith's claims on the merits, holding "the [state trial] court's findings regarding counsel's parole-eligibility advice are clearly erroneous" and that Meredith's petition "sufficiently alleged deficient performance by defense counsel regarding the parole-eligibility advice he gave to Meredith." ... Because Meredith's petition was actually decided on the merits and any procedural noncompliance was not jurisdictional, his Rule 37 petition was "properly filed" and he is entitled to statutory tolling of the one-year statute of limitations here.

See Docket Entry 8 at CM/ECF 1-2. Meredith alternatively maintained that he benefits from equitable tolling, noting that he has been pursuing his rights diligently and an extraordinary circumstance—the state trial court's failure to "rule on [his] Rule 37 petition for more than a quarter-century," see Docket Entry 8 at CM/ECF 5—constituted an impediment to his filing a timely 2254 petition. Alternatively, Meredith maintained that he is actually innocent.

Payne thereafter filed a reply to Meredith's response. Payne first maintained that it is irrelevant the state Supreme Court alternatively denied Meredith's Rule 37 petition on the merits because the petition failed to comply with Arkansas law. With respect to Meredith's reliance upon equitable tolling, Payne maintained the following:

7

... Whether Meredith was pursuing his claims diligently in state court has no bearing on whether he was reasonably diligent in filing his *federal habeas petition*. *See Gordon v. Hobbs*, 823 F.3d 1188, 11958 n.4 (8th Cir. 2016). He could have timely filed a federal habeas petition while his improperly filed Rule 37 petition was pending. Meredith was not diligent in seeking federal habeas.

Moreover, the [state] trial court's delay in ruling on his postconviction petition is not "some extraordinary circumstance" that "prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Instead, Meredith's untimeliness is attributable to his own actions—his failure to comply with Ark. R. Crim. P. 37.1(b). If he had complied with the state procedural rules, then his habeas petition would have been timely despite the trial court's delay in dismissing his postconviction petition. A petitioner's pro se status, lack of legal knowledge or resources, or any confusion about state postconviction procedures does not justify equitable tolling. *See Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012); *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004). Thus, Meredith's not entitled to equitably toll the statute of limitations.

See Docket Entry 9 at CM/ECF 3-4. (Emphasis in original).

Limitations. A petitioner has one year during which he may challenge, in federal court, his state court conviction and/or sentence by filing a 2254 petition. If he does not file his petition within that one year period, save some reason for tolling the period or otherwise excusing the petition's untimely filing, the petition is forever barred. 2244(d) provides that the one-year period begins from the latest of one of four dates or events.

8

Payne maintains that the one-year limitations period in this case is found at 2244(d)(1)(A), which provides that the one-year period begins on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. Applying 2244(d)(1)(A), Payne maintains that the one-year period began on May 11, 1998, or after the expiration of the time for Meredith to have sought direct review in state court.

Payne's position has merit and is adopted. The one-year limitations period here is that found at 2244(d)(1)(A). Applying 2244(d)(1)(A), Meredith had thirty days after the entry of the judgment and commitment order to seek review with the state Supreme Court. When he did not do so, his conviction became final on May 11, 1998. He then had one year to file a timely 2254 petition. He failed to do so, though, filing the petition at bar on January 15, 2026. The Court therefore finds that the petition at bar is untimely, and the only question is whether there is some reason for tolling the limitations period or otherwise excusing the untimely filing of the petition.

Statutory Tolling. 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitations. In

Walker v. Norris, 436 F.3d 1026 (8th Cir. 2006), the Court of Appeals

considered the phrase "properly filed" as used in 2244(d)(2) and construed

the phrase in the following manner:

> In Artuz v. Bennett, 531 U.S. 4, 5, 8 ... (2000), the Supreme Court defined a "properly filed" state post-conviction relief petition under section 2244(d)(2):
>
>> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. [...] And an application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.
>
> (citations and footnote omitted).
>
> After Artuz, the Supreme Court in Carey v. Saffold, 536 U.S. 214, 217 ... (2002), defined a "pending" state post-conviction relief petition under section 2244(d)(2). The Court determined a petition is pending during "the time between a lower state court's decision and the filing of a notice of appeal to a higher state court." Id. The Court intimated, if the state court ultimately determines the petition did not comply with the state's timeliness requirements, the petition would not have been pending during that period within the meaning of section 2244(d)(2)'s tolling provision. Id. at 226 ... Thus, the Court concluded once the state's highest court determines the petition is untimely, "that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits." Id. (internal quotation omitted).

10

See Walker v. Norris, 436 F.3d at 1030. See also Beery v. Ault, 312 F.3d 948, 950 (8th Cir. 2002) (properly filed application is one that meets all procedural requirements); McKinney v. Payne, No. 4:22-cv-00811-LPR-JVV, 2023 WL 6166568 (E.D.Ark. Mar. 2, 2023), report and recommendation adopted, No. 4:22-cv-00811-DPM, 2023 WL 6162913 (E.D.Ark. Sept. 21, 2023) (Rule 37 petition not properly filed when it failed to comply with formatting requirements).

Here, Meredith's Rule 37 petition was timely filed. It was not, however, "properly filed" for purposes of 2244(d)(2) because the petition did not meet the State of Arkansas' procedural requirements for filing a Rule 37 petition. In the parlance of Artuz v. Bennett, the petition's delivery and acceptance were not in compliance with the applicable laws and rules governing such filings, laws and rules that prescribe, inter alia, the form of the document. The form of his petition was defective as the state Supreme Court found that the petition did not comply with the length and formatting requirements of Rule 37.

Meredith maintains that the defects in his Rule 37 petition were non-jurisdictional but were instead simple "procedural noncompliance." See Docket Entry 8 at CM/ECF 3. As such, the state trial court had the discretion to address the non-conforming petition.

11

The undersigned cannot embrace Meredith's contention for at least two reasons. First, a petitioner's failure to comply with a state's procedural rules will bar a petition as not "'properly filed,' regardless whether it is labeled a jurisdictional requirement." See Walker v. Norris, 436 F.3d at 1032. Thus, it does not matter whether the defects in Meredith's Rule 37 petition—defects pertaining to length and formatting requirements—were jurisdictional or not.

Second, United States District Judge Susan Webber Wright was presented with the same issue in Boyle v. Norris, No. 5:06-cv-00117-SWW, 2006 WL 3431897 (E.D.Ark. Nov. 29, 2006). There, the state Supreme Court affirmed the denial of Boyle's Rule 37 petition because of a procedural irregularity, the procedural irregularity being that his thirteen-page petition exceeded the maximum number of pages. Boyle then filed a 2254 petition in federal court, and the respondent raised a limitations defense. Judge Wright found that Boyle did not benefit from statutory tolling because his Rule 37 petition exceeded the maximum number of pages and was therefore not "properly filed." She noted that since the state Supreme Court found the petition invalid, "'that is the end of the matter.'" See Boyle v. Norris, 2006 WL 3431897, 3 (internal quotation marks, citations, and footnote omitted). Boyle v. Norris compels the same result here.

12

Does it matter that the state Supreme Court alternatively addressed the merits of Meredith's Rule 37 petition? Although his position—it does matter for purposes of statutory tolling—has some appeal, the Court believes that Payne has the stronger position. As noted in <u>Walker v. Norris</u>, United States Supreme Court precedent is such that "once the state's highest court determines the petition is untimely, 'that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits.'" <u>See</u> <u>Walker v. Norris</u>, 436 F.3d at 1030 (quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 226 (2002)).[2] <u>See</u> <u>also</u> <u>Runyan v. Burt</u>, 521 F.3d 942 (8th Cir. 2008) (state post-conviction petition that did not comply with Iowa verification and filing fee requirements not "properly filed" for statutory tolling purposes even though state courts addressed merits).

Equitable Tolling. Although 2244(d)(2) affords Meredith no benefit, the one-year limitations period for filing a timely 2254 petition can be equitably tolled. <u>See</u> <u>Gordon v. Arkansas</u>, 823 F.3d 1188 (8th Cir. 2016). In that case, the Court of Appeals explained that equitable tolling "asks whether federal courts may excuse a petitioner's failure to comply with

---

[2]     Admittedly, the issue in <u>Walker v. Norris</u> involved the timeliness of Walker's Rule 37 petition, but the undersigned believes the same rationale applies to the length and formatting problems plaguing Meredith's Rule 37 petition.

*federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law." See Id. at 1195 (internal quotation omitted) (emphasis in original). Equitable tolling is warranted if the petitioner has been pursuing his rights diligently and some extraordinary circumstance stood in his way and prevented a timely filing. See Id.

Equitable tolling is not warranted here because Meredith has not been pursuing his rights diligently. Ignoring the disturbing delay that occurred in state court, he waited nine months after the state Supreme Court affirmed the denial of his Rule 37 petition to file the petition at bar. The case at bar therefore mirrors Nelson v. Norris, 618 F.3d 886 (8th Cir. 2010), a case in which the Court of Appeals found the following:

> ... [Nelson] failed to pursue his rights diligently. The Arkansas Supreme Court denied his petition for rehearing on November 17, 2005. ... But Nelson did not file his federal habeas petition until August 21, 2006–277 days, or nine months—*after* the Arkansas Supreme Court denied rehearing. In Pace [v. DiGuglielmo], the Supreme Court found that a petitioner was not diligent when he waited five months after the judgment of conviction became final to file his petition. ... Similarly, in Earl v. Fabian, the petitioner alleged "that he did not receive notice that his judgment of conviction had become final until ... approximately seven months after the decision was rendered," but this court noted that the petitioner "still had ... a span of approximately eight months ... to file his habeas petition." ... This court concluded that "under such circumstances [the petitioner] would not be entitled to equitable tolling." ...

We hold that, like the petitioners in <u>Pace</u> and <u>Earl</u>, Nelson failed to pursue his rights diligently by not filing his habeas petition until nine months after the Arkansas Supreme Court denied rehearing and therefore is not entitled to equitable tolling of the statute of limitations.

<u>See</u> <u>Nelson v. Norris</u>, 618 F.3d at 893 (emphasis in original). <u>See</u> <u>also</u> <u>Stuart v. Kelley</u>, No. 5:18-cv-00317-BD, 2019 WL 8750365 (E.D.Ark. Apr. 12, 2019) (equitable tolling not warranted when petitioner waited more than eight months after appellate court decision to file 2254 petition); <u>Lewis v. Norris</u>, No. 5:14-cv-00367-BD, 2014 WL 7399208 (E.D.Ark. Dec. 29, 2014) (same).[3]

<u>Actual Innocence</u>. Notwithstanding the foregoing, a showing of actual innocence may excuse the untimely filing of a 2254 petition. <u>See</u> <u>McQuiggin v. Perkins</u>, 569 U.S. 383 (2013). The actual innocence gateway is demanding and seldom met; the petitioner must show that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" <u>See</u> <u>Story v. Kelley</u>, No. 4:17-cv-00853-KGB, 2018 WL 3193807, 1 (E.D. Ark. 2018) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)).

---

[3]   Payne faults Meredith for not filing a "protective" 2254 petition, and seeking a stay of that proceeding, during the pendency of his Rule 37 petition. The procedure was approved in <u>Pace v. Diguglielmo</u>, 544 U.S. 408 (2005), but Meredith filed his 2254 petition six years before <u>Pace v. Diguglielmo</u> was decided.

15

Meredith maintains that he is actually innocent. In support of the assertion, he generally alleges that the prosecution withheld exculpatory evidence.[4] The only specific evidence he identifies, though, is as follows:

> ... evidence from jailhouse informants that [Curtis] Reese [Meredith's co-defendant], not Meredith, was the actual shooter; that its detectives attributed the same inculpatory statement to both Reese and Meredith; and that its DNA testing based on mixture, swabs, and commingled materials was unreliable and firearm evidence overstated and exaggerated the findings; ...

See Docket Entry 1 at CM/ECF 38-39.

The record reflects that Meredith and Curtis Reese ("Reese"), "acting alone or with each other," were charged with two counts of capital murder for the deaths of Eric Ogden ("Ogden") and Lance Kelloms ("Kelloms"), see Docket Entry 3, Exhibit 2 at CM/ECF 18-19, counts that exposed Meredith and Reese to the death penalty. Meredith eventually elected to plead guilty to two counts of murder in the first degree and testify at Reese's trial in exchange for the prosecution waiving the death penalty and agreeing to the imposition of concurrent life sentences.

---

[4]    Much of Meredith's claim of actual innocence is long on allegations but short on specifics. For instance, he alleges that "after he pleaded, officers with Criminal Investigation Division ... showed him evidence 'that could have seriously helped [his] case.'" See Docket Entry 1 at CM/ECF 39. He failed, though, to identify the evidence.

At a subsequent change of plea/sentencing hearing, Meredith testified under oath about the events surrounding Ogden and Kelloms' murders. <u>See</u> Docket Entry 3, Exhibit 4 at CM/ECF 8-22. Payne adequately summarized the relevant parts of Meredith's testimony at the hearing, which was as follows:

> ... On July 9, 1997, [Meredith] and Reese decided to rob Ogden and Kelloms. ... So Reese borrowed a gun from a friend, and he and Meredith arranged to meet Ogden and Kelloms at a trailer. ... Before the meeting, Meredith told his brother that Ogden and Kelloms "wouldn't live to see tomorrow." ... While Meredith was trying to break into the trailer where they were supposed to meet, Reese shot and killed Ogden and Kelloms. ... Then Meredith and Reese went through the victims' pockets and stole some money. ... The next day, Meredith and Reese returned the gun to the owner and burned the victims' wallets. ... Meredith said that he was "involved" "from before, middle, and after" the murders. ... He knew that he and Reese planned to rob the victims and that someone could get shot. ... Meredith then helped destroy evidence and lied to the police about the murders. ...

<u>See</u> Docket Entry 7 at CM/ECF 2-3.[5]

---

[5]   At Reese's first trial, Meredith changed parts of his testimony. Meredith denied taking money off the victims' bodies, destroying evidence, and making many of the statements he made to the police during their investigation. <u>See</u> Docket Entry 7, Exhibit 3 at CM/ECF 72-74, 82-101. Reese's first trial ended in a mistrial, and a second trial was held. At the second trial, Meredith claimed to have no memory of Ogden and Kelloms' murders. <u>See</u> Docket Entry 7, Exhibit 3 at CM/ECF 5-9. Meredith's testimony from Reese's first trial was then read in open court. <u>See</u> Docket Entry 7, Exhibit 3 at CM/ECF 10-101. The reading of Meredith's testimony reflects, in part, that Ogden and Kelloms were apparently murdered over a twenty-five dollar dispute. <u>See</u> Docket Entry 7, Exhibit 3 at CM/ECF 45-46.

In light of the new evidence offered by Meredith, would no juror, acting reasonably, have voted to find Meredith guilty beyond a reasonable doubt? The undersigned thinks not, and the actual innocence gateway therefore affords Meredith no benefit. The undersigned so finds for at least four reasons. First, it was never in dispute that it was Reese, not Meredith, who was the "actual shooter," but in the State of Arkansas, "[a] person is criminally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense." See Davis v. State, 350 Ark. 22, 86 S.W.3d 872 (2002). Second, Meredith failed to specify what inculpatory statements the police might have attributed to both Meredith and Reese. Third, the investigation into Meredith's role in Ogden and Kelloms' murders did not hinge on DNA testing of materials or firearm evidence. To the extent it did, the evidence is not "new," as it was available before Meredith pleaded guilty. Last, the actual innocence gateway is concerned with factual or actual innocence, see Rick v. Harpstead, 110 F.4th 1055 (8th Cir. 2024), and Meredith is not factually innocent. He admitted in open court that he had a role in the murders, acknowledging that he was involved from "before, middle, and after," and solemn declarations in open court carry a strong presumption of verity. See Blackledge v. Allison, 431 U.S. 63 (1977).

Recommendation. Two things about this case are disturbing. First, Meredith received parole eligibility advice from his trial attorney that the state Supreme Court acknowledged was incorrect. Second, the state trial court ignored Meredith's Rule 37 petition for over twenty-five years before denying it. The undersigned derives no satisfaction in recommending that Payne's motion to dismiss be granted, see Docket Entry 6; Meredith's petition be dismissed; judgment be entered for Payne; and a certificate of appealability be denied. Meredith's 2254 petition is untimely. Controlling legal precedent is such that the petition's untimely filing is salvaged by neither statutory nor equitable tolling, and the petition's untimely filing is not salvaged by his assertion of actual innocence.

IT IS SO ORDERED this 15th day of April, 2026.

_____
UNITED STATES MAGISTRATE JUDGE